BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: First National Collection Bureau, Inc. )  MDL Docket No. 2527
Telephone Consumer Protection Act )
(TCPA) Litigation )
_____ )

**INTERESTED PARTY RESPONSE OF PLAINTIFF DENNIS BROWN IN SUPPORT OF TRANSFER AND CONSOLIDATION OF RELATED ACTIONS IN THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION, UNDER 28 U.S.C. § 1407**

Pursuant to the United States Judicial Panel on Multidistrict Litigation Rule of Procedure 6.2(e), Plaintiff Dennis Brown ("Plaintiff Brown") in *Brown v. First National Collection Bureau, Inc.*, S.D. Ohio No. 1:13-CV-00524 (the "*Brown* action"), on behalf of himself and all others similarly situated, respectfully submits this Interested Party Response to Defendant First National Collection Bureau, Inc.'s ("FNCB's") motion seeking to transfer and consolidate three related actions[1] to the United District Court for the Southern District of California pursuant to 28 U.S.C. § 1407.

## I. INTRODUCTION

FNCB seeks transfer and consolidation of three pending actions alleging that FNCB violated the Telephone Communications Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by using an automatic telephone dialing system and/or artificial or prerecorded voice to place unsolicited calls to the consumers' cellular phones without their consent. In a footnote in its moving papers (which FNCB did not serve on Plaintiff Brown), FNCB acknowledges that the

---

[1] FNCB's motion seeks to transfer *Neal v. First Nat'l Collection Bureau, Inc.*, E.D. Cal. No. 2:13-cv-01206-WBS-CKD (the "*Neal* action"); *Hunter v. First Nat'l Collection Bureau, Inc.*, S.D. Cal. No. 3:13-cv-01515-JSL-KSC (the "*Hunter* action"); and *Beell v. First Nat'l Collection Bureau, Inc.*, D. Nev. No. 2:13-cv-01303-KJD-CWH (the "*Beell* action"). The *Hunter*, *Beell*, and *Neal* plaintiffs have filed briefs in support of transfer in the Southern District of California.

1

*Brown* action is a fourth case involving substantially identical allegations, but excludes *Brown* from FNCB's transfer request because the *Brown* action is broader (i.e., includes additional non-TCPA claims) and is more procedurally advanced. (Doc. 1-1 at 4 n.3). Nevertheless, on March 4, 2014, the JPML noted that it had "identified the [*Brown* action] for inclusion in this MDL." (Doc. 14).

Plaintiff Brown agrees with FNCB that the *Neal*, *Hunter*, and *Beell* actions, and any other tag-along actions asserting similar or related claims against FNCB that may be filed in or removed to federal courts, should be transferred and consolidated for pretrial purposes before a single federal court for pretrial discovery and class certification purposes. Centralization under Section 1407 is necessary to eliminate duplicative discovery; prevent inconsistent rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary. However, Plaintiff Brown does not believe that the *Brown* action should be excluded simply because it is broader and more procedurally advanced than the other actions. To the contrary, those very reasons support transfer and consolidation of all of the related actions before Judge S. Arthur Spiegel in the Southern District of Ohio, who has been actively presiding over the *Brown* action since its inception and is thoroughly familiar with the case, its parties, counsel, facts and law. Transfer and consolidation is necessary under Section 1407 in order to promote efficient management of the litigation because:

- The actions involve nearly identical factual allegations that FNCB engaged in illegal telephonic debt collection activities, and the actions bring largely duplicative legal claims. Thus, discovery in all of the related actions will necessarily focus on the same documents, witnesses, and other evidence pertaining to FNCB's telephonic debt

collection practices. Absent consolidation, duplicative discovery and potentially conflicting dispositive legal rulings may result.

- The actions involve overlapping putative classes. Absent consolidation, federal district courts could issue conflicting class certification rulings.

- The Panel favors transfer of related actions to the district in which the broadest and most procedurally advanced action is pending.[2] The *Brown* action asserts broader claims (and thereby provides greater relief) and is more advanced than the other actions. Indeed, **Plaintiff Brown has already moved for class certification**. As support for his class certification motion, Plaintiff Brown relied upon information learned (1) by deposing FNCB's officer in charge of TCPA and FDCPA compliance; (2) propounding interrogatories, document requests, and admissions to FNCB, and insisting on, and obtaining, supplemental responses through multiple negotiations between counsel for Plaintiff and FNCB; and (3) issuing a subpoena on the provider of FNCB's third-party automatic telephone dialing system and forcing production over that company's objections, resulting in thousands of pages of highly probative documents. In contrast, it appears that little discovery has been done in *Neal, Hunter,* or *Beell,* which have not proceeded any further than the answer stage.

- Judge S. Arthur Spiegel and Magistrate Judge Karen L. Litkovitz of the Southern District of Ohio have been actively presiding over the *Brown* action since its inception and are thoroughly familiar with the case, its parties, counsel, facts and law. To order a re-assignment of the claims from experienced MDL jurists completely familiar with this

---

[2] *See In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 484 F.Supp.2d 1355, 1356 (J.P.M.L. 2007) (transferring two actions to C.D. California court "because the California action appears to be slightly broader and somewhat more procedurally advanced").

3

litigation to a Judge "starting from zero" would be counterproductive and antithetical to principles underlying multidistrict litigation and Section 1407. The judicial caseload profiles also favor transfer to the Southern District of Ohio over the Southern District of California.

## II. BACKGROUND

The *Brown*, *Neal*, *Hunter*, and *Beell* actions are all overlapping putative class actions brought by consumers who allege that FNCB used an automatic dialing and automated messaging system to place unsolicited debt collection calls to their cellular phones in violation of the TCPA. The cases were filed in courts spread across the country within days of each other, between June 17, 2013 and July 26, 2013. Each seeks to certify a nationwide class of persons who received one or more such calls from FNCB in the previous 4 years. Although the class definitions vary slightly from case to case, the TCPA classes themselves are substantively identical. The allegations supporting the TCPA claims are also virtually indistinguishable.

However, the *Brown* action stands apart from the other three cases insofar as its Amended Class Action Complaint includes two additional claims[3] that rest on a common nexus of facts regarding FNCB's telephonic debt collection practices and automatic telephone dialing system. Plaintiff Brown alleges that FNCB uses false representations, and deceptive, unfair and unconscionable means to collect consumer debts in violation the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). For instance, Plaintiff Brown alleges that FNCB's automatic telephone dialing system manipulates caller ID system information to mislead consumers about the source and purpose of the call and disguise FNCB's identity as a Nevada-

---

[3] *See In re Plywood Antitrust Litig.*, 376 F.Supp. 1405, 1406 (J.P.M.L. 1974) (ordering transfer of actions because "although plaintiffs' overall legal strategems differ somewhat, they all rest on a common nexus of facts").

4

based debt collector. Plaintiff Brown further alleges that FNCB uses its automatic telephone dialing system to "harass, oppress, and abuse" consumers by "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass" under 15 U.S.C. § 1692d(5). The *Brown* action also includes a claim for violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.* ("OCSPA"), because violations of the TCPA and FDCPA constitute violations of the OCSPA. In short, the telephone calls at issue in all of the cases are the same – autodialied, pre-recorded collection calls placed by FNCB – but the plaintiff in the *Brown* case seeks the additional relief potentially available to the class under the FDCPA and applicable state law.

According to FNCB's moving papers, the *Neal*, *Hunter*, and *Beell* cases remain in their infancy; FNCB has filed answers in all three, but no dispositive or class certification motions have been filed. Discovery has not even commenced in *Hunter* or *Beell*, and has just commenced in the *Neal* action. (Doc. 1-1 at 4). In contrast, the *Brown* action is significantly more advanced procedurally (but not so advanced that the efficiencies of centralization would not be realized).[4] FNCB is currently preparing its response to Plaintiff Brown's detailed and evidence-ladened motion to certify three classes, which was filed on March 3, 2014. FNCB has twice moved for partial judgment on the pleadings, the first of which was mooted by Plaintiff Brown's filing of an amended complaint. Plaintiff Brown has fully responded to the FNCB's

---

[4] *See In re Unified Messaging Solutions LLC Patent Litig.*, 883 F.Supp.2d 1340, 1342 (J.P.M.L. 2012) (rejecting argument that more procedurally advanced actions should be excluded from MDL because the overall efficiencies to be gained would offset any delay resulting from centralization); *In re Activated Carbon-Based Hunting Clothing Mktg. and Sales Practices Litig.*, 626 F.Supp.2d 1358, 1359 (J.P.M.L. 2009) ("[I]t is likely that substantial efficiencies will occur by including the Minnesota action ... so that discovery and other pretrial proceedings already completed in the Minnesota action can inure to the benefit of newly-filed actions.").

second motion, which is fully briefed and currently pending before the Court.[5] Plaintiff Brown has also already deposed FNCB's officer primarily responsible for compliance with the TCPA and FDCPA, and intends to schedule several more depositions soon. FNCB has answered interrogatories and been forced to supplement its responses. FNCB has also produced numerous significant documents, including its confidential financial records, pursuant to a negotiated Protective Order that was entered by Judge Spiegel. Plaintiff Brown additionally subpoenaed FNCB's automatic telephone dialing system provider, and after the provider initially objected to the subpoena, obtained a full and voluminous response of thousands of relevant documents that have been reviewed, analyzed, and incorporated into Plaintiff's class certification motion.

Although Plaintiff Brown knows of no other related cases pending, FNCB is best situated to inform the Panel whether there are any other class actions in federal district courts that raise the same or similar claims.

### III. ARGUMENT

**A. Transfer of the Pending Class Actions for Coordinated Pretrial Proceedings is Proper.**

The principal goals of 28 U.S.C. § 1407 are to avoid duplicative discovery, prevent inconsistent or repetitive rulings, promote efficient management of litigation, and conserve the resources of the parties, counsel, and the courts.[6] These goals are best served by transferring the above-identified cases for coordinated pretrial proceedings. 28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact," (ii)

---

[5] FNCB's motion for partial judgment on the pleadings in the *Brown* case deals solely with the FDCPA claims asserted by Mr. Brown, and is not, therefore, potentially dispositive of the case.

[6] *See* MANUAL ON COMPLEX LITIGATION § 22.33 at 367 (4th ed. 2004).

6

transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the action."[7]

Here, Section 1407's requirements for transfer are satisfied. The above-referenced class actions against FNCB are based on the same or substantially similar questions of law and fact. In addition, transfer will promote the convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification. Indeed, because all of the actions assert virtually identical claims and allegations requiring substantial discovery into highly technical aspects of FNCB's automated telephone dialing system and account management policies and procedures, they are ideal candidates for transfer for coordinated or consolidated pretrial proceedings.

### 1. The related actions involve common questions of fact.

FNCB correctly asserts that the first requirement of Section 1407 — that actions involve common questions of fact — is satisfied. The factual issues to be determined in each of the actions proposed for transfer and coordination arise from the same course of conduct by FNCB and are, therefore, identical for pretrial purposes. Common questions of fact and law at issue in the related actions include, but are not limited to, the following:

a. whether FNCB made non-emergency calls to Plaintiff and Class Members' cellular telephones using an automatic telephone dialing system;

b. whether FNCB made non-emergency calls to Plaintiff and the Class Members' cellular telephones using an artificial or prerecorded voice; and

c. whether FNCB can demonstrate that it obtained prior express consent from the Class Members to make such calls.

---

[7] 28 U.S.C. § 1407(a); *In re Cutter Labs, Inc. "Braunwald-Cutter" Aortic Heart Valve Prods. Liab. Litig.*, 465 F.Supp. 1295, 1296 (J.P.M.L. 1979).

7

Even a cursory review of the pleadings reveals that the factual issues to be determined in each of the actions are nearly identical, making transfer to a single forum highly appropriate.[8]

2. **Consolidating the class actions will further the convenience of the parties and the witnesses.**

Consolidation of the related class actions would likewise satisfy the second requirement of Section 1407 because it will serve the convenience of the parties and witnesses. Discovery in all of the related actions will necessarily focus on documents, witnesses and other evidence pertaining to FNCB's telephonic debt collection practices; the equipment, technology, and databases it uses to manage its accounts; and the steps FNCB took, or failed to take, to ensure compliance with federal law. Discovery conducted thus far has revealed that FNCB's computer systems and account management databases are highly technical, and will require substantial discovery and entail significant expense. Because these actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Additionally, considering that FNCB has made tens of millions of automated phone calls in the last four years, Plaintiff Brown anticipates that additional actions may be soon filed. Coordination of the actions would enable a single District Judge to establish a single pretrial schedule, thereby minimizing inconvenience to witnesses and expense to parties.

3. **Transfer and consolidation will promote just and efficient conduct of the related actions.**

For these same reasons, transfer and coordination of the related cases would also promote the just and efficient adjudication of the actions. The related actions all raise common questions of fact and law. Plaintiffs in each action will likely seek to depose many of the same individuals

---

[8] *See In re Neurontin Mktg. & Sales Practices Litig.*, 342 F.Supp. 2d 1350, 1351 (J.P.M.L. 2004) (finding existence of common issues to warrant transfer where "[a]ll actions are purported class actions involving allegations that common defendants" engaged in illegal conduct).

and request production of a substantially similar set of documents. Failure to consolidate these actions would, therefore, result in unnecessary and duplicative discovery; witnesses would have to appear for multiple depositions; and FNCB would have to negotiate and produce multiple sets of overlapping documents. Consolidation and coordination of the actions would avoid this needless waste of resources and confer benefits upon both the plaintiffs as well as FNCB, the common defendant to all of the actions.[9]

Plaintiff Brown recognizes that there are presently only four related actions pending in the federal courts of which he is aware and that this Panel places a "heavier burden" on movants where only a small number of cases are sought to be transferred.[10] However, as previously noted, due to the sheer size of the population affected by FNCB's collection call practices — tens of millions of phone calls per year — Plaintiff Brown anticipates additional cases may be filed.

Also, the fact that all four actions are seeking to certify overlapping classes, opening the possibility of inconsistent rulings on certification issues, weighs heavily in favor of transfer and consolidation. Moreover, FNCB's telephone and account management systems are technical, and will necessarily require extensive use of experts and a substantial amount of expensive discovery.[11] To avoid the possibility of inconsistent rulings (including inconsistent

---

[9] *See In re Univ. Serv. Fund Tel. Billing Prac. Litig.*, 209 F.Supp. 2d 1385, 1386 (J.P.M.L. 2002).

[10] *See, e.g., In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969).

[11] *See In re Clark Oil & Refining Corp. Antitrust Litig.*, 364 F.Supp. 458, 459 (J.P.M.L. 1973) (ordering consolidation of two actions because "the greater complexity of factual issues presented here and the presence of competing requests for class designation distinguish this litigation from the Scotch Whiskey cases and make transfer necessary in order to avoid duplication of discovery and eliminate the possibility of conflicting pretrial rulings"); *In re Nissan Motor Corp. Antitrust Litig.*, 352 F.Supp. 960, 961 (J.P.M.L. 1973) (similar); *In re CBS Licensing Antitrust Litig.*, 328 F.Supp. 511, 512 (J.P.M.L. 1971) (similar).

determinations on class certification) and duplicative discovery, as well needless taxation on the judicial system, the actions should be consolidated before the same court.[12]

**B. The Related Actions Should Be Transferred to the Southern District of Ohio for Coordinated or Consolidated Pretrial Proceedings Before the Honorable S. Arthur Spiegel.**

In selecting a transferee district, this Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed the furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges."[13] The Panel also favors transferring related actions to the district in which the broader-based actions were filed.[14] On balance, the these factors weigh in favor of transferring the related cases to Judge Spiegel in the Southern District of Ohio, an experienced transferee judge[15] who is familiar with the contours of this litigation by virtue of having presided over the most procedurally advanced action. The parties to the related actions will benefit from Judge Spiegel's familiarity with the merits of this controversy that he gained by presiding over the *Brown* action.

This Panel usually transfers actions to the court where a related action is the most procedurally advanced.[16] Although all four actions were filed within five weeks of each other,

---

[12] *See In re AT&T Mobility Wireless Data Serv. Sales Tax Litig.*, 710 F.Supp.2d 1378, 1380 (J.P.M.L. 2010); *Neurontim*, 342 F.Supp. 2d at 1351; *In re European Rail Pass Antitrust Litig.*, No. 1386, 2001 U.S. Dist. LEXIS 1417, at *3 (J.P.M.L. Feb. 7, 2001).

[13] MANUAL ON COMPLEX LITIGATION § 20.131 (4th ed. 2004).

[14] *See In re Regents of the Univ. of Cal.*, 964 F.2d 1128, 1136 (Fed. Cir. 1974).

[15] *See In re Telectronics Pacing Sys., Inc.*, No. MDL-1057, 137 F.Supp.2d 1029 (S.D. Ohio 2001) (Spiegel, J.).

[16] *See, e.g., In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*, 598 F.Supp.2d 1384, 1386 (J.P.M.L. 2009) (selecting district because the "most procedurally advanced actions are pending there"); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 626 F.Supp.2d 1358, 1359 (J.P.M.L. 2009); *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices*

the *Brown* proceedings before Judge Spiegel (and Magistrate Judge Karen L. Litkovitz) are substantially more advanced than any other action. After FNCB moved for judgment on the pleadings, Plaintiff Brown filed the currently operative Amended Class Action Complaint, which asserts two additional state and federal law claims on behalf of additional Ohio and nationwide classes, and accordingly contains nearly twice the allegations as the complaints in the *Neal*, *Hunter*, and *Beell* actions.[17] Therefore, the *Brown* case is substantially broader than the *Neal*, *Hunter*, and *Beell* actions. FNCB has since filed a second motion for judgment on the pleadings, which is now fully briefed and pending before Judge Spiegel.

Furthermore, the *Brown* Court has already presided over multiple discovery disputes, including one concerning the extent to which Plaintiff Brown is entitled to third party discovery from the company that provides FNCB's automatic telephone dialing system. Depositions have begun and more are to be scheduled. Interrogatories have been propounded and answered. Thousands of pages of documents have been produced, including confidential documents produced pursuant to a Protective Order entered by Judge Spiegel, and substantial third party discovery from FNCB's automatic telephone dialing system provider has been accomplished resulting in the production of thousands of pages of additional documents. In contrast, the *Neal* and *Hunter* actions in California and the *Beell* action in Nevada remain in their infancy.

---

*Litig.*, 484 F.Supp. 2d 1355, 1356 (J.P.M.L. 2007) ("Panel has selected the Central District of California, because the California action appears to be slightly broader and somewhat more procedurally advanced than the Iowa action."); *In re Enfamil Lipil Mktg. and Sales Practices Litig.*, 764 F.Supp.2d 1356, 1357 (J.P.M.L. 2011).

[17] *See In re Simply Orange Juice Marketing and Sales Practices Litig.*, 867 F.Supp.2d 1344, 1345 (J.P.M.L. 2012) (transferring actions to district where "plaintiff's counsel ... appear to have significantly investigated and developed the factual issues underpinning their complaint" where no single case is more procedurally advanced).

According to the moving papers, little beyond the filing of pleadings has taken place in these cases, and no significant, substantive discovery has taken place.

There is no singular geographical focal point for this litigation — FNCB attempted to collect debts from consumers located throughout the country – but Ohio is centrally located in the middle of the contiguous U.S. The Southern District of Ohio and surrounding region are serviced by multiple airports and all major airlines, and would be accessible and convenient for all parties, witnesses, and attorneys. And while FNCB is headquartered in Nevada and some convenience could be served by transferring the cases there, that consideration is insufficient to tilt the balance.[18] Judge Spiegel and Magistrate Judge Litkovitz and their staff are familiar with the case, its parties, counsel, the facts and the law.

Current docket conditions also favor transfer and consolidation in the Southern District of Ohio rather than FNCB's proposed Southern District of California venue. Neither of the proposed transferee judges appears to be presiding over MDL proceedings at this time.[19] But the Federal Court Management Statistics (Admin. Office of the Courts Eff. Sept. 30, 2013)[20] reflects that the Southern District of California has 456 pending cases per Judgeship compared with Southern Ohio's 417. The more important "weighted filing" count — the primary basis upon which the Administrative Office of the Courts and Senate Judiciary Committee assess the need for new Judgeships — also favors transfer to the Southern District of Ohio. As of Sept. 30, 2013, the Ohio district had a weighted filings per Judgeship of 482 (ranked 43rd highest among

---

[18] Notably, FNCB has not moved to transfer the related actions to District of Nevada, where the *Beell* case is currently pending. Rather, FNCB has moved to transfer the actions to the Southern District of California, where the *Hunter* action is pending.

[19] http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-19-2014.pdf.

[20] http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-september-2013.pdf&page=1.

the 94 Districts), while Southern California's had a weighted filings per Judgeship of 566 (ranked 25th highest).[21] As a point of comparison, the national average of weighted filings per Judgeship is 545.[22] Metrics measuring the median time from civil case filings to trial also favor the Southern District of Ohio (30.7 months) over the Southern District of California (32.5 months).[23] In fact, none of the jurisdictions currently presiding over a related action – Southern California, Central California, or Nevada – have better metrics than Southern Ohio.[24]

## IV. <u>CONCLUSION</u>

For the reasons stated above, Plaintiff Brown respectfully requests that this Panel transfer the above-listed class actions and any subsequently filed cases raising similar claims to the Southern District of Ohio for coordinated pretrial proceedings before the Honorable S. Arthur Spiegel.

Dated: March 11, 2014

> Respectfully submitted,
>
> s/Jeffrey S. Goldenberg
> ----
> Jeffrey S. Goldenberg (Ohio Bar No. 0063771)
> Todd B. Naylor (Ohio Bar No. 0068388)
> Goldenberg Schneider, LPA
> One West Fourth Street, 18th Floor
> Cincinnati, Ohio 45202
> (513) 345-8291 (phone)
> (513) 345-8294 (fax)
> jgoldenberg@gs-legal.com
> tnaylor@gs-legal.com

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

Christian A. Jenkins (Ohio Bar No. 0070674)
Niroshan M. Wijesooriya (Ohio Bar No. 0078780)
2712 Observatory Avenue
Cincinnati, Ohio 45208
Tel: (513) 723-1600
Fax: (513) 723-1620
cjenkins@minnillojenkins.com
niro@minnillojenkins.com
*Trial Attorneys for Plaintiff Dennis Brown*